United States v. Gregory, 22-1771 and 1865. Ms. Farrah, am I pronouncing it right? Yes, you are. Can you reserve one minute? Yes. May it please the Court, Clarice Farrah, Pro Bono Counsel for Defendant Appellant, Mr. David Gregory. David Gregory is currently serving time for a conviction that the government agrees must be vacated. Okay, so given that concession has been made, can you let us know what you think we're here to decide? Your Honor, I think you're here to confirm that the case should be, that Count 6, the 924C conviction for attempted Hobbs Act robbery, should be vacated and the case remanded, and also to decide on our... Well, everybody agrees on that, right? Yes, Your Honor. And then Mr. Gregory also respectfully requests that the Court reassign the case to a different district court on remand. Why? Your Honor, for two principal reasons that go to the fact that Mr. Gregory believes that the district court below has formed opinions, visceral opinions against him that the Court would have substantial difficulty in setting aside. So he served, he went in in 1997, he was in his 30s, he served how much time? Your Honor, he served just under three decades at this point, about 28 years. And the time remaining on his sentence is what? He's currently set to be released in 2026, Your Honor. Okay, and if Corman hadn't added the role enhancement, what would his sentence be? Depending on where the district court would have landed in the guidelines, even if he had gone... What would the range be? The range would have gone up to 355, I believe, Your Honor, or 322. This is without the... This is without the leadership enhancement, but Your Honor, he also should have vacated count six, which he refused to do. So below, at the August 2022 resentencing, that sentence took into account the count that should be vacated, the extra five years on the 924C conviction, as well as the four-point leadership enhancement, which the government did not seek in 1997 and the Court did not consider in 1997 either. And as I recall, but correct me if I'm wrong, the PSR initially did not call for a role enhancement. That's correct, Your Honor. No one requested the role enhancement in 1997. Did the government request it at any point? It did not. It merely agreed with the district court in 2022 and then said that it would be an appropriate enhancement. Part of the reason it stated that it didn't request the enhancement in 1997 is because of the court's statement that it would go to the top of the guidelines in 1997, so the government maintained that that enhancement was not necessary. So what do you think is going on here? I've been around this kind of work for many years. I don't think I've ever seen anything like this. What do you think is going on? Your Honor, I've been around a lot less long, but from what I've seen, I think that the court was very troubled by Mr. Gregory and his co-defendants' conduct in the mid-1990s and was trying to figure out ways to fashion a sentence that would be appropriate to that conduct. The problem is the court has refused at resentencing, both in 2020 and in 2022, to view Mr. Gregory as he stands before the district court at the time of resentencing, as is required by law. It is locked into the judgments it formed about the defendant in 1997. I mean, that's not entirely fair. I mean, there was a lot of transcripts in which your client seemed to get in his own way by arguing matters that seemed to have been settled, by appearing that he was questioning some of the determinations that had been made earlier and the like, trying to downscale some of the things that he had done, like violating the young girl. I mean, the question I think we have, or the question that I have at least, is what are the two pieces of evidence that you think both suggest that he would be prejudiced upon remand if we tell him, you know, can't you count six? Like, what do we have reason to believe that he wouldn't do what he was supposed to do in that case? Yes, Your Honor, I think there are two buckets of record evidence. The first are some of the statements, the visceral judgments that the court has made against our client, including referring to him as a sociopath. How would you describe somebody who burns people's genitals and, by his own word, violates an 11-year-old? I mean, is that outside the pale, calling somebody a sociopath? Is that prejudice? Your Honor, I think that that term is a mental health diagnosis, which the defendant does not have, but it's not calling him a sociopath on its own. It's also that coupled with comparing him to Sammy the Bull. I see two pieces of evidence. I see calling him a sociopath and comparing him to somebody who admitted to murder. Are those the two pieces or are there more? Additionally, there are the multiple times at the 2022 and the 2020 resentencing where the district court blatantly says to Mr. Gregory that he doesn't believe him, calls him a liar. There's a colloquy where he repeats three times in response to Mr. Gregory, so you say... So that was in the context of giving him a bunch of time, right? Like, he was letting Mr. Gregory speak. He said, I'm going to let you finish. I mean, it's a complicated record, right? It is complicated, Your Honor. But nevertheless, it's not complicated to see that the district court has labeled Mr. Gregory a liar who cannot be believed, whose testimony he calls... But does any of that matter? It's your position that for the conduct that occurred 30 years ago and for the statements that your client made in 30 years in jail with a positive, if not exemplary record during incarceration is enough? Your Honor, yes. And not just based on numbers alone, but these are significant numbers of years that Mr. Gregory has spent in prison. But moreover, as you just noted, the exemplary rehabilitative record that Mr. Gregory has amassed, especially in his last decade and two decades while incarcerated, which also the district court did ignore when assessing the correct sentence here. And moreover, the fact that Mr. Gregory is currently serving time on the sentence that everyone here agrees should be vacated. Were that sentence simply wiped away and vacated, Mr. Gregory would have time served at this point. And that ultimately is the reason why Mr. Gregory requests that that count be vacated and that an impartial judge who has not formed these judgments, that it would have substantial difficulty setting aside, be assigned this case in place of the current district court judge. How old was your client when he went to jail? He was in his 30s, Your Honor. 31? Yes, early 30s. And how old is he now? He is 68, I believe, Your Honor, and ailing. And his health is deteriorating with every passing year. In the over year that has passed since this appeal was filed, in late 2022, his health has continued to deteriorate. Thank you. Good morning, Your Honor. May it please the court. Sean Sherman, Assistant US Attorney on behalf of the United States. Your Honor, the parties agree that count six should be vacated here. And while the defendant should be subject to resentencing, reassignment to another district court is not warranted in this case. To start with, Judge Corman has been involved in the case since 1997. He was the trial judge in this case. He heard and saw all of the evidence and all of the witnesses. He was the judge at the Fatico hearing and at the initial sentencing. His level of background... You think he remembers it? It was 30 years ago. Your Honor, from... He's had hundreds of cases since then. You could get on top of this record in an afternoon counsel if you were an experienced district court judge. Your Honor, here, there is a great deal that Judge Corman, specifically with respect to credibility and witnessing individuals and assessing their credibility, the defendant and Mr. Quinones... He made his credibility judgments, he assessed this man's conduct and his character, and he was required to serve 30 years in jail. How much more time does the government think this man should be locked up? Your Honor, the government thinks that it should be remanded, as it will be for resentencing, and at that point the district court... What are you going to recommend when it gets back down to 10 more years, 20 more years, what? Your Honor, the government will assess the guidelines at the time that it is remanded. You know what the guidelines are. You know, you run these computations when you're thinking through what the issues in this case were. What do you think... How much more time should this guy be... Is the government going to recommend that he's been locked up? Your Honor, the government will consistently recommend the guideline sentence that was recommended with the leadership enhancement that the government initially... Just to make sure everybody's on the same page, the government did seek an upward departure at the initial sentencing, which Judge Corman rejected, and that was back in the 1990s. And the PSR, Your Honor, did not include that, but the government did seek that departure at that time, and I just want to make sure that we're all... So why didn't Todd Corman give it to him at that time? What has changed between now and then? Your Honor... The record hasn't changed. Judge Corman denied it in light of the guidelines at that time, but did acknowledge that he had credited the leadership testimony of Mr. Quinones, and that if it was remanded for resentencing, he may well depart. And then subsequently, Your Honor, at the second resentencing, or at the resentencing, the government did seek the upward leadership enhancement. There was argument about it, and Judge Corman submitted or issued a statement of reasons finding that. Now, Your Honor, I think an important case or a helpful case to look at here, and a contrast, is a decision in United States v. Johnson, 850 F. 3rd, 515. That involved Judge Jacobs and Your Honor. And there, as here, the district court made no error that went... What year was this? This was in 2017, Your Honor. And there, as here, the district court made no error that went to the sentencing issue. It was a guilty plea. And this court concluded that the guilty plea was not knowing and voluntary because of some errors of the district court. But there, the court acknowledged, as here, there was no error that went to sentencing. Judge Corman, here, did not make any mistake at the sentencing. The error that we're all agreeing should be vacated is count six and attempted Hobbs-Ackroyd. But that misses the point. The point is he had the full record before him when he sentenced this man initially with respect to the role enhancement, and it is a very debatable question about whether he should have gotten the role enhancement. And so he fashioned a sentence. He made a mistake. He had apparently forgotten what he charged the jury. He charged them on attempt and then sentenced him on substantive. And then once he realized the effect of the mistake, he doubled down. He went back. He rethought his role enhancement and added it in. And so my question, what's going on here? Your Honor. I've never seen anything like this. So two points in response. First is that the initial, everybody agrees this was a mistake, Your Honor, with respect to count six. Everybody agrees this man ought to be punished. He spent 30 years in jail. If he'd murdered somebody and got prosecuted across the street, he'd be out by now. He'd been out seven or eight years ago. Well, the testimony is that he was involved in potentially murders, Your Honor, and as well as an attempted murder if the firearm had discharged. He wasn't convicted of any murder. If he'd shot somebody with his Glock and the person fell down dead on the ground in the course of a robbery or what have you and he got prosecuted across the street, he'd have been out years and years ago. Judge Corman. We know this is a punitive system, but I need you to explain to me why the government believes that this man hasn't paid his debt. He made dumb comments before the judge, no question about that. He did horrible things years leading up to his initial sentencing. Your Honor, Judge Corman was prepared to give the defendant a time-served sentence for exactly the reasons Your Honor is describing. He says it very candidly in the record, and that's at the joint appendix, Your Honor. Excuse me. 251. And he was prepared to give him a time-served sentence, and then the defendant spoke. And the defendant's words turned Judge Corman's view of the defendant upside down. He makes it very clear. He got mad at the guy. He didn't like what the guy said. And I certainly get that. I mean, I've been on the bench and heard that. But how many more years in jail should this man get because of some comments he made that angered the judge? Your Honor. What kind of system are we operating under here? The government is not suggesting that the defendant should have a specific sentence. The government is just arguing that it was not an abuse of discretion here. The whole thrust of your argument is that as a consequence of those comments, he should spend five, ten more years in jail. No, Your Honor. The thrust of the government's argument— How did we get to this point? The thrust of the government's argument is that those comments are sufficient to indicate that the district court was prepared for a time-served sentence.  Because the district court very clearly, in fact, says it. The district court says, Your Honor—and I'll point you to joint appendix. Apologies, Your Honor. The district court says, I would have given him a time-served sentence, but then was— Apologies. Just give me one second to find it. I believe it's at 332, Your Honor. It was only after the defendant himself spoke that he believed it was inappropriate. The defendant—so here, Your Honor, the government is arguing that there is a basis— What did he say to Judge Corman that deserved to give this man ten more years in jail? What was it? Your Honor, the defendant showed no remorse. He said—he denied accepting responsibility. And here— What did he say? Quote him. Your Honor, I don't have it in front of me, and I can pull it up with the defendant's statements if you would give me one minute. It's at joint appendix 280 to 282 is his initial testimony. And then subsequently, Your Honor, at the second resentencing, when the defendant did, in fact, try at that point to say that he had accepted responsibility, the court was troubled because a few months earlier, after the initial resentencing, the defendant had submitted a letter to the warden of the penitentiary that said that he was not a violent criminal. And so, therefore, the district court did not believe the defendant and considered the rehabilitation arguments— This man has been in jail 30 years. Your Honor. I mean, think about what you were doing 30 years ago. Think about what I was doing 30 years ago. And to say—to belittle the effect—you know, I don't care how bad someone is. I mean, 30 years is 30 years. There's no civilized country that imposes these kinds of penalties. And here it was not for anything he had done, but because the judge formed an impression of who he was. We respectfully disagree. I couldn't do that when I was a district court judge. The district court sentenced the defendant to a guideline sentence. Your Honor, I see my time is up. The district court sentenced the defendant—may I briefly conclude? The district court sentenced the defendant to a guideline sentence. The leadership enhancement has not been appealed. Judge Corman was prepared for a time-served sentence, and only in light of the defendant's own inability to show remorse did he conclude the defendant was not deterred and was not rehabilitated. Okay. Before you sit down, you tell me how many more years should—maybe we would—how many more years should this man spend in jail? He spent 30. What else? Your Honor, the government would look at the guidelines and request a guideline sentence, which at this point was up to 405. So that gives the defendant another 26 months, Your Honors. Another what? Based on the guidelines and 405 months, which was the sentence imposed, the defendant would be in for another 26 months. Thank you, Your Honors. Your Honor, briefly, those 405 months, that includes the 924C conviction that we all agree should be vacated. And so Mr. Gregory has served his time at this point. I want to pick up where the government left off. This notion that the district court was prepared to give Mr. Gregory time served until some statements at the 2020 and then subsequently 2022 re-hearing. It is precisely because of the judgments that the district court made about Mr. Gregory at those hearings that this court should remand to a different district court judge. He has formed judgments about Mr. Gregory that he's clearly having substantial difficulty in setting aside. And that's the standard that we assess whether reassignment is appropriate. Do we use that as a standard? Or do we ask whether it would be apparent to outside observers that the judge is so committed to a perspective on this defendant that a new sentence issued by that judge might be unjust? Your Honor, you've articulated it better than I have. It's not an attack on the judge to say that thorough knowledge of the record and repeated procedures confers a kind of understanding and perspective that a person can't shake. I mean, we're all human. Absolutely, Your Honor. And again, there's no need to find personal bias on the part of the district court here. It's whether a reasonable observer would conclude that the district court couldn't approach this impartially. Even if the judge could. Even if the judge could. And finally, to Judge Perez's question, in my opening argument, Judge Perez asked what the best evidence of actual bias was here. But again, the court need not find actual bias. It's about the appearance of bias. And I think that we've demonstrated that that does exist here. And we respectfully request that the court reassign to a different- Your position is all we need is appearance, right? Yes, Your Honor. Thank you. Thank you. Thank you so much. You were both very helpful. Appreciate your argument.